UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NOAH G. ALI,

                Plaintiff,

                                          **Hon. Hugh B. Scott**

        v.                                     09CV166A

                                              **Report
and
Recommendation**

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 6 (plaintiff), 8 (defendant)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Noah G. Ali ("Ali" or "plaintiff"), through his parent filed an application for child disability insurance benefits and supplemental security income on November 1, 2004. That application was denied. The plaintiff appeared before Administrative Law Judge Stanley Moskal ("ALJ"), who considered the case de novo and concluded, in a written decision dated August 28, 2008, that the plaintiff was not disabled within the meaning of the Social Security

Act. The ALJ's decision became the final decision of the Commissioner on February 9, 2009, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on February 24, 2009 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 6, 8). The motions were argued and submitted on September 18, 2009.

## **FACTUAL BACKGROUND**[1]

Plaintiff is applying for benefits due to his schizophrenia (see R. 115). He alleges disability from July 1, 2004 (R. 305-06). On June 9, 2004, he was treated at the emergency room at Erie County Medical Center and prescribed Zyprexa (R. 115).

Plaintiff was born in October 1986 (R. 52), turning 18 years old when he applied for benefits. He completed the eleventh grade and can speak, read, and write English (R. 51, 54, 58). He has never been gainfully employed.

## **MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff claims that he became unable to work due to emotional problems, claiming that he had difficulty concentrating and thinking, which prevents him from working (R. 52, 54, 55). His sister stated that plaintiff did not do that much around the house, that he merely paced around the house and stayed in his room most of the time (R. 60, 61). Plaintiff did not sleep well and often wore the same clothes for weeks (R. 61), he did not comb his hair, get a haircut, shower, or shave without being told to do so (R. 62). Although he is able to make a sandwich, his meals are

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

prepared by other family members (R. 62). Plaintiff would perform chores for about five minutes and then walk away (R. 63). He did not talk to his family unless asked a question and, when talking with him, plaintiff's mind appears to be elsewhere (R. 65, 66). He did not appear to pay attention to what he read or heard (R. 66). Plaintiff's sister took him to Erie County Medical Center's emergency room where he was diagnosed as having schizophrenia (R. 348). She testified that plaintiff saw or heard things that were not there, one time breaking down the walls of a closet to locate hidden cameras that were not there (R. 348-49, see R. 349); plaintiff denies committing these acts (R. 349). She later testified that plaintiff's symptoms continued and that he was being treated at Lakeshore Behavioral Health, Inc., once per month with a psychiatrist and every other week with a counselor until Lakeshore ceased to have a staff psychiatrist (R. 368, 374).

*Application*

Applying the five-step analysis to determine disability, as for the first step, the ALJ found that plaintiff never engaged in substantial gainful activity. While noting that plaintiff's schizophrenia is "severe," for the second step, the ALJ found that condition did not constitute an impairment or combination of impairments that meets or is medically equal to a listed impairment in the Social Security regulations, for the third step. In particular, the ALJ found that plaintiff's schizophrenia was in remission and was being treated by medication. Thus, the ALJ concluded that it was questionable whether plaintiff had the requirements of "paragraph A" of Listing 12.03 for schizophrenia (which includes delusions, hallucinations, catatonic or other grossly disorganized behavior, incoherence, loosening of associations, illogical thinking, or emotional withdrawal and/or isolation) or two of the four categories under "paragraph B" of that

3

listing. Those four categories include marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. 23-24.) For each of the "paragraph B" categories, the ALJ found that plaintiff had either no restrictions or mild or moderate limitations, especially if medicated (R. 25-26).

Moving to the fourth step, the ALJ found that plaintiff had the residual functional capacity to perform the full range of work at all exertional levels but limited to simple, repetitive entry level jobs with moderate supervision in a low contact setting. The ALJ then found that plaintiff could perform jobs that exist in significant number in the national and local economies. (Docket No. 1, Compl., Ex. A, ALJ Decision, R. 21-30.)

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

4

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>  (1) whether the plaintiff is currently working;
> 
>  (2) whether the plaintiff suffers from a severe impairment;
> 
>  (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
> 
>  (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
> 
>  (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues the ALJ erred in failing to develop the record as a whole in denying his request for a subpoena for the vocational expert to appear to give the basis for his conclusion about the job titles plaintiff could perform in the national economy. Plaintiff also contends that the ALJ failed to apply 20 C.F.R. pt. 404 Subpt. P, App. 1, Listing 14.08(8), in describing plaintiff's condition as being severe under this regulation. Third, he also argues that

the ALJ's residual functional capacity finding violates 20 C.F.R. §§ 404.1520(c) and 414.1521(b). (Docket No. 6, Pl. Memo. at 1st, 9th to 13th unnumbered pages.)

I.   Denied Subpoena

When asked on cross-examination about the source of the numbers of jobs cited, the vocational expert testified that he used the federal and state labor departments for statistics, the National Occupational Outlook Handbook, the Dictionary of Occupational Titles (or "DOT"), and the ONET, and identified particular local jobs through private job banks (R. 388-89). The vocational expert then stated that he did not use the Occupational Employment Quarterly, preferring to "do [his] own digging" (R. 389; see Docket No. 8, Def. Memo. at 14).

Plaintiff argues that the ALJ should not have relied upon the vocational expert's opinions regarding the significant number of jobs without first inquiring into the reliability of the expert's opinions, McKinnie v. Barnhart, 368 F.3d 907 (7th Cir. 2004); see Gittens v. Astrue, No. 07 Civ. 1397, 2008 U.S. Dist. LEXIS 48020, at *23 (S.D.N.Y. June 23, 2008). The Commissioner has the burden of establishing that jobs that plaintiff can perform exist in the national or local economy, Barnhart v. Thomas, 540 U.S. 20, 25 (2003); Gittens, supra, 2008 U.S. Dist. LEXIS 48020, at *22. In Gittens, the court remanded that matter for further administrative proceedings because the ALJ relied upon the opinion of the vocational expert who cited a non-existent report as authority for his opinion, Gittens, supra, 2008 U.S. Dist. LEXIS 48020, at *23-25. Since the ALJ has an affirmative duty to develop the record as a whole, plaintiff argues that he had a right to examine all the evidence and could obtain that material by a subpoena (Docket No. 6, Pl. Memo. at 9th to 10th unnumbered pages).

Defendant notes that plaintiff did not ask to hold the record open while he submitted additional evidence or submit such evidence to the Appeals Council (Docket No. 8, Def. Memo. at 24). Defendant accepts the vocational expert's recognized expertise as providing the necessary foundation for the expert's testimony to not require a remand, see Pena v. Astrue, No. 07 Civ. 11099, 2008 U.S. Dist. LEXIS 97879, at *27 (S.D.N.Y. Dec. 3, 2008) (quoting Bayless v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)).

There is a split among the Circuits on whether a vocational expert's testimony as to the significant number of jobs that exist can be taken merely upon the word of the expert due to his or her recognized expertise, with this split being recognized in the two 2008 decisions cited above from the United States District Court for the Southern District of New York, compare Gittens, supra, 2008 U.S. Dist. LEXIS 48020, at *22-25, with Pena, supra, 2008 U.S. Dist. LEXIS 97879, at *27. The Seventh Circuit in McKinnie held that an ALJ should not accept the vocational expert's testimony without first inquiring into the reliability of the expert's opinions, 368 F.3d 907 (7th Cir. 2004). Meanwhile, the Ninth Circuit, in Bayless, held that the ALJ could rely upon the vocational expert's findings as to employment statistics because of the expert's recognized expertise, 427 F.3d at 1218. In Bayless, the court was denying plaintiff's argument that the Federal Rules of Evidence and expert testimony case law of Daubert v. Merrill Dow Pharmaceuticals, Inc.,[2] and Kumho Tire Co. v. Carmichael,[3] apply in administrative Social Security disability proceedings, 427 F.3d at 1218 & n.4 (citing Richardson, supra, 402 U.S. at

---

[2] 509 U.S. 579 (1993).

[3] 526 U.S. 137 (1999).

400; 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.950(c), 416.1450(c) (ALJ may receive evidence that may be inadmissible in courts under rules of evidence)).

While the rules of evidence are not applicable in administrative proceedings, the ALJ needs some evidentiary basis to rely upon the opinions of the vocational expert. Here, the vocational expert claimed that he did his own "digging" rather than rely upon trade publications in rendering his conclusions. Although the ALJ found the expert's testimony consistent with the information provided in the DOT (R. 30) relied upon in part by the expert (see R. 388-89), plaintiff is entitled to learn what the expert was "digging" for and the sources the expert used in rendering his conclusions and the ALJ should have this information to evaluate the validity of the expert opinion rendered. The fact that an expert is an expert alone should not justify unthinking reliance upon his opinion. This Court should accept the Seventh Circuit's position and require the ALJ to probe into the reliability of the expert's findings and here **remand** this case for further proceedings.

For a complete record, this Report next considers the substantive arguments raised by plaintiff.

II.     Substantive Objections

   A.     Failure to Apply Appropriate Listing

Plaintiff cites to Listing 14.08(8) as defining a marked limitation of activities of daily life as including doing daily chores, grooming, and personal hygiene, 20 C.F.R. pt. 404, Subpt. P, App. 1, § 14.00I5, 6 (hereinafter "Listing")[4]. But that listing is for claims of disability arising

---

[4]Plaintiff cites to Listing 14.08(8), but no such listing exists. The Listing 14.08 describes HIV.

from HIV/AIDS.  The applicable (and nearly analogous) standard is under Listing 12.00 for mental disorders, see Listing 12.00C, C1, which provides that

> "Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. . . .
> "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.  In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability."

Listing 12.00C, C1.

Here, there was testimony that plaintiff failed to consistently groom himself and maintain his personal hygiene and did daily chores sparingly.  Plaintiff argues that, by finding that he did not meet Listing 12.03 for schizophrenia and finding that he had a residual functional capacity to perform limited simple repetitive entry level jobs with moderate supervision, the ALJ misapplied the definition of "marked impairment" outlined in the Listing (id. at tenth unnumbered page). He seeks either reversal of the ALJ's decision or remand for proper application of the appropriate "marked impairment" standard (id. at twelfth unnumbered page).  Plaintiff argues that he suffers from auditory and visual hallucinations, stays in dark rooms, and laughs at inappropriate times, he stays isolated at home and continues on medication (id. at eleventh unnumbered page).  He concludes that he has marked limitations in daily living as well as in social functioning (id. at twelfth unnumbered page), thus having two elements of the "paragraph B" for Listing 12.03

schizophrenia, and the ALJ erred in finding that he had no restriction in daily living (provided he was medicated) and moderate limitation in social functioning (id.).

Defendant rests upon the ALJ's findings that plaintiff had no limitations on activities of daily living and was only moderately limited as to his social functioning, hence plaintiff failed to establish two of the criteria to meet the listing for schizophrenia (Docket No. 9, Def. memo. at 17, 18). Defendant also notes that plaintiff failed to document a history of two years of chronic schizophrenic disorder (id. at 18-19).

The record, however, shows plaintiff's condition is "marked" with regard to activities of his daily living and his social functioning. Plaintiff lives in isolation, lacks interest in anything other than being alone (see R127), did not care for his personal hygiene for days at a time, improving his activity only with medication. His affect was flat/blunted and he laughed and smiled inappropriately during a July 2004 hospital interview (id.). He has auditory and visual hallucinations even after being on medication (see R287 (Jan. 2, 2008, evaluation)).

B.  Residual Functional Capacity Finding Violates Regulations

Plaintiff contends that he is not capable of performing simple repetitive entry-level jobs with moderate supervision, as found by the ALJ (Docket No. 6, Pl. Memo. at twelfth unnumbered page). He denies that his symptoms are in remission (id.), as found by the ALJ (R24), and he is withdrawn and has a flat and blunt affect. He argues that the residual functional capacity finding (and the ALJ's hypotheticals based upon that finding) was improper, that the ALJ disregarded plaintiff's treating professionals and their assessments of him.

Defendant concludes that the ALJ's residual functional capacity finding is supported by substantial evidence (Docket No. 9, Def. Memo. at 19). Defendant points to Dr. Qayyum of

Lake Shore Behavioral's assessment that plaintiff was now in remission (id. at 20, R288). But Dr. Qayyum did not conclude that plaintiff's condition was in remission, he merely indicated in January 2008 that with medication plaintiff's symptoms are reduced. In that evaluation, Dr. Qayyum prescribed continuing plaintiff's medication. (R288-89; see also R206 (Dr. Mohan's review of medical history, noting benefit of medication for plaintiff's condition.) The evaluation of Dr. Thomas Ryan, Ph.D., that plaintiff can perform simple tasks is also predicated on plaintiff taking his medication (R302).

While the ALJ (and defendant) focus upon plaintiff's abilities upon medication, it is not clear that the ALJ considered whether plaintiff's limitations persisted despite this medication, cf. Listing 12.00G. Since this matter is being remanded on other procedural grounds discussed above, the ALJ should also consider whether the medication plaintiff's limitations persist despite being on medication.

Therefore, defendant's motion for judgment on the pleadings should be **denied** and plaintiff's motion for judgment should be **granted and this matter remanded** for further proceedings.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **reversed** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 8) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 6) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
November 9, 2009